**Leah C. Lively,** OSB No. 962414
livelyl@lanepowell.com
**Sharon Bolesky,** OSB No. 062784
boleskys@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| **DONALD DEMONT,** | No. 10-CV-0644-ST |
| Plaintiff, | |
| v. | Defendants' **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| **STARBUCKS CORPORATION; SHEILA GREY; RYAN JASPERSON; LISA BALL; MEGAN HUMPHREYS-LOVIN;** and **ERIN KOTCHELL,** | (Oral Argument Requested) |
| Defendants. | |

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................1

II. STATEMENT OF FACTS....................................................................................1

     A.    Plaintiff's Allegations in His Amended Complaint Cannot Support His
          Claims  Against the Individual Defendants.............................................1

B.    Relevant Facts That Cannot Reasonably Be Disputed Show Plaintiff's Claims
    Against the Individual Defendants Are Not Supported. ....................................4

          1.    The individual defendants and their roles at Starbucks during the
               relevant time period. ...................................................................5

          2.    Mr. Jasperson scheduled plaintiff for regular shifts according to
               plaintiff's self-reported – but undocumented – scheduling
               requirements and granted plaintiff's request for time off. ........6

          3.    Plaintiff brings a weapon to work and displays it during his
               corrective action meeting with Mr. Jasperson and Ms. Gray.......7

          4.    Plaintiff yells at and belittles Ms. Gray during a telephone
               conversation; she instructs him not to return to work until further
               notice. .........................................................................................9

III. ARGUMENT ....................................................................................................11

     A.    Because the Individual Defendants Have Been Fraudulently Joined,
          Complete Diversity Exists and Remand Is Improper.............................11

     B.    Plaintiff Cannot Sustain a Valid Aiding and Abetting Claim Against the
          Individual Defendants; They Are Therefore Fraudulently Joined. .......12

          1.    Plaintiff's Amended Complaint fails to allege sufficient facts to
               support a   plausible aiding and abetting claim against any of the
               individual defendants. ...............................................................12

          2.    Under Schram v. Albertson's, Inc. and McPhail v. Milwaukie
               Lumber Company, plaintiff's Amended Complaint fails to state a
               claim upon which relief may be granted against the individual
               defendants, and they are is accordingly fraudulently joined....16

          3.    The legislative history of ORS 659A supports shows that liability
               for aiding and abetting does not extend to individual employees. ...........20

           4.    Several court have recognized that individual supervisors in
               discrimination cases are fraudulently joined...........................23

          5.    The relief sought against the individuals is identical to the relief
               sought from Starbucks, confirming that plaintiff has no separate
               and district claim for relief against the individual defendants on
               which to state a claim.................................................................25

     C.    Plaintiff's Retaliation Claim Against Gray, Jasperson and Cochell Is
          Insufficiently Plead and Not Cognizable Against Them as Individuals as a
          Matter of Law Because They Were Not Plaintiff's Employer. .............26

           1.    Gray Jasperson and Cochell Are Not Liable Because They Were
               Not Plaintiff's "Employer."......................................................26

          2.    No allegations support a plausible claim of action of retaliation
               against Cochell, Jasperson or Gray...........................................27

     D.    Plaintiff's Does Not Have a Valid Claim for Intentional Interference with
          Economic Relations Against the Individual Defendants Because
          Employees Acting Within the Scope of Employment – As Plead Here –
          Are Not "Third Parties" and Because Plaintiff Has Not Plead Facts
          Showing that Any of the Individuals Interfered With His Economic
          Interests......................................................................................28

PAGE i -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

      E.     Attorney Fees Are Not Appropriate Even If The Case Is Remanded Given
            The Lack Of Plausible Pleading And Authorities Cited Herein. ........................ 30
IV.  CONCLUSION ................................................................................................................ 31

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Monsanto Company*,
    2009 WL 426546 (N.D. Fla. 2009) .................................................................. 14

*Ashcroft v. Iqbal*
    129 S. Ct. 1937 (2009).........................................................................passim

*Ayoub v. Baggett*,
    820 F. Supp. 298 (S.D. Tex. 1993)..................................................................... 1

*Ballinger v. Klamath Pacific Corp.*,
    135 Or. App. 438 *rev. den.* 322 Or. 360 (1995) ................................................ 26

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544 (2007)...........................................................................passim

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000)............................................................................ 27

*Brown v. Far West Fed.*,
    66 Or. App. 387, 674 P.2d 1183 (1984)........................................................... 15

*Burlington Industries, Inc. v. Ellerth*,
    524 U.S. 42, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)..............................24, 25

*Bush v. Nationwide Mut. Fire Ins. Co.*,
    2008 U.S. Dist. LEXIS 61039 (S.D. Miss. 2008) ............................................ 14

*Chesterman v. Banmon*,
    305 Or. 439 (1988) ........................................................................................... 30

*Dodd v. Fawcett Publications, Inc.*,
    329 F.2d 82 (10th Cir.1964).............................................................................. 5

*Gaither v. JQH Hotels*,
    Opinion and Order, Case No. CV 09-629-MO .....................................15, 16, 31

PAGE ii -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

*Green v. Warden*,
  699 F2d 364-369 (7th Cir. 1983)..................................................................18, 19

*Gymnastics USA v. McDougal*,
  92 Or. App. 453, 758 P.2d 881, *rev. den.*, 307 Or. 77, 763 P.2d 731 (1988) ....................... 15

*Hiersche v. Seamless Rubber Company*,
  255 F. Supp. 682 (D. Or. 1963)...................................................................... 20

*Hillman v. North Wasco County PUD*,
  213 Or. 264 (1958) ................................................................................ 23

*Jordan v. SAIF Corporation (In re Jordan)*,
  343 Or. 208 (2007) ..............................................................................21, 22

*King Estate Winery, Inc. v. Dept. of Revenue*,
  329 Or. 414 (1999) ..............................................................................21, 22

*Kruso v. International Tel. & Tel. Corp.*,
  872 F.2d 1416 (9th Cir.1989)........................................................................ 15

*Laferty v. Newbry*,
  200 Or. 685 (1954) ..............................................................................21, 22

*Lyons v. Stovall*,
  188 F.3d 327 (6th Cir. 1999)........................................................................ 19

*Maulding v. Clackamas County*,
  278 Or. 359 (1977) ................................................................................ 23

*McCabe v. General Foods Corp.*,
  811 F.2d 1336 (9th Cir.1987).....................................................................5, 11, 12

*McGanty v. Staudenraus*,
  321 Or. 532, 901 P.2d 841 (1995) .................................................................28, 30

*Miller v. Deschutes Valley Water District*,
  663 F. Supp. 2d 1001 (D. Or. 2009) ................................................................ 24

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001)....................................................................11, 12

*Plute v. Roadway Package Sys., Inc.*,
  141 F. Supp. 2d 1005 (N.D. Cal. 2001) ............................................................ 12

*Positive Results Mktg. v. Buffalo-Lake Erie Wireless Sys. Co.*,
  2008 U.S. Dist. LEXIS 39924 (M.D. Pa. 2008).................................................... 14

PAGE iii -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

*Rapp v. Multnomah County*,
 77 Or. 607 (1915) .................................................................................................. 23

*Reid v. Evergreen Aviation Ground Logistics*,
 2009 WL 136019 (D. Or. Jan. 20, 2009) .......................................................... 26

*Reyna v. City of Portland*,
 2002 WL 32770553 (D. Or. 2002) ..................................................................... 26

*Royal Aloha Partners v. Real Estate Division*,
 59 Or. App. 564 (1982) ...................................................................................... 21

*Schram v. Albertson's*
 146 Or. App. 415, 934 P.2d 483 (1997), *rev. dismissed* 328 Or 366, 328 Or 419
 (1999) ...........................................................................................................passim

*Scotty's Contracting and Stone, Inc. v. United States*,
 326 F3d 785 (6th Cir. 2003).............................................................................. 19

*Smoot v. Chicago, Rock Island & Pacific Railroad Co.*,
 378 F.2d 879 (10th Cir.1967)............................................................................... 5

*Sniadoski v. Unimart of Portland*,
 1993 WL 797438 (D. Or. 1993) ................................................................... 16, 31

*State v. Raper*,
 174 Or. 252 (1944) ............................................................................................ 20

*Steele v. Mayoral*,
 231 Or. App. 603, 220 P.3d 761 (2009).............................................................. 27

*Tippen v. Republic Fire and Casualty Ins. Co.*,
 No. 06-7701, 2007 WL 4219352 (E.D. La. 2007) ............................................. 14

*United States v. Rey*,
 811 F2d 1453 (11th Cir 1987)............................................................................ 19

*Walthers v. Gossett*,
 148 Or. App. 548, 941 P.2d 575 (1997).............................................................. 14

*Zasada v. Gap, Inc.*,
 2006 WL 2382514 (D. Or.)........................................................................... 24, 26

*Zimmerman v. State Dept. of Justice*,
 170 F.3d 1169 (9th Cir. 1999)............................................................................ 20

PAGE iv -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

**STATUTES**

2260 amends ORS ................................................................................................................ 18

28 U.S.C. § 1332(a) ........................................................................................................... 11

ORS 174.010 ...................................................................................................................... 22

ORS 659.030 ...............................................................................................................16, 17

ORS 659.101 ...................................................................................................................... 16

ORS 659.121 ................................................................................................................17, 18

ORS 659.400 ...................................................................................................................... 18

ORS 659.410 ...................................................................................................................... 18

ORS 659.410(1) .................................................................................................................. 18

ORS 659.410 and 659.425 ................................................................................................. 18

ORS 659.425 ...................................................................................................................... 18

ORS 659.425(1) .................................................................................................................. 18

ORS 659A ..................................................................................................... 17, 20, 21, 26

ORS 659A.001(4) ............................................................................................................... 26

ORS 659A.030 ............................................................................................................17, 20

ORS 659A.030(1)(f) ......................................................................................................26, 27

ORS 659A.030(1)(g) ......................................................................................................14, 27

ORS 659A.030(g) ............................................................................................................... 16

ORS 659A.040 ................................................................................................................... 21

ORS 659A.040, 659A.043, 659A.046,659A.069, 659A.100-145, 659A.230 ........................... 18

ORS 659A.043, and 659A.046 .......................................................................................... 21

ORS 659A.063 ................................................................................................................... 21

ORS 659A.100-145 ............................................................................................................ 21

PAGE v -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

ORS 659A.112 ................................................................................................... 20

ORS 659A.230 ................................................................................................... 21

ORS 659A.885 ................................................................................................... 17

ORS 659A.885(1)–(5) ........................................................................................ 22

ORS 659A.885(3) .................................................................................... 17, 20, 22

ORS 659A.885(6) .......................................................................................... 21, 22

**OTHER AUTHORITIES**

FRE 201 ........................................................................................................ 18, 19

FRE 201 (b)(2) and (d) ................................................................................. 18, 19

House Bill 2260 ................................................................................................. 17

Rule 12(b)(6) ...................................................................................................... 14

PAGE vi -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

# I.  INTRODUCTION

As one federal court observed, "[G]iven the relative financial positions of most companies versus their employees, the only time an employee is going to be sued is when it serves a tactical purpose" such as a means to attempt to defeat diversity.  *Ayoub v. Baggett*, 820 F. Supp. 298, 300 (S.D. Tex. 1993).  Such is the case here.  Plaintiff's claims against current and former Starbucks partners[1] Sheila Gray, Ryan Jasperson, Lisa Ball, Megan Humphreys-Loving, and Erin Cochell are not asserted because such claims are valid, but because plaintiff is attempting to dodge the appropriate diversity jurisdiction of this court.  The law, however, does not permit plaintiff to select his forum by fraudulently joining defendants against whom he has no valid claims.

On its face, Plaintiff's Amended Complaint fails to allege claims against any of the individual defendants upon which relief may be granted.  Defendants Gray, Jasperson, Ball, Humphreys-Loving, and Cochell are fraudulently joined in this action and – as a result – removal to this court based on the complete diversity between plaintiff and defendant Starbucks Corporation is proper.  Plaintiff's Motion to Remand should be denied.

## II.  STATEMENT OF FACTS

**A.   Plaintiff's Allegations in His Amended Complaint Cannot Support His Claims Against the Individual Defendants.**

Plaintiff's Procedural Background statement and recitation of certain allegations throughout his Motion to Remand contain several misrepresentations of the allegations asserted in his own Amended Complaint.  Defendants provide the following relevant allegations from Plaintiff's Amended Complaint to clarify any misstatements in his Motion:

- In August 2008, plaintiff accepted transfer to the 29th Street store and began working there later that month as a [shift] supervisor.  (Amended Complaint ¶¶ 9-10).  Ms. Ball

---

[1] Starbucks refers to its employees as "partners."

PAGE 1 -   MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

and Ms. Humphreys-Loving "became *Plaintiff's co-supervisors*" at the 29th Street store upon plaintiff's transfer there. (*Id.* ¶ 10) (emphasis added).

- Plaintiff suffers from diabetes and required a fixed schedule at Starbucks to help control his condition. (*Id.* ¶ 11.) Soon after requesting a fixed schedule, plaintiff received "negative feedback" from peers Ball and Humphreys-Loving; Plaintiff alleges Ms. Ball and Ms. Humphreys-Loving were "irritated by Plaintiff's need for a fixed schedule." (*Id.* ¶ 12.) This "irritation" is the only allegation of discrimination or harassment that plaintiff asserts against Ms. Humphreys-Loving. (*See generally,* Amended Complaint.)

- In October 2008, plaintiff had viral bronchitis for which he took "a few days of medical leave." (*Id.* ¶ 13.) Plaintiff informed Mr. Jasperson of his need for medical leave and Mr. Jasperson approved the leave. (*Id.*)

- After taking time off work for viral bronchitis in October 2008, plaintiff returned from work and noticed his hours were reduced to 20 hours per week. (*Id.*) Plaintiff spoke with Ms. Ball about his schedule. (*Id.*) She "became angry and verbally abusive, yelled and screamed at plaintiff for claiming to be sick all the time, even though plaintiff presented her with a note from his doctor. Ball complained that because of plaintiff's absence, she had to open the store every day." (*Id.*)

- Ms. Ball was also allegedly upset at plaintiff because plaintiff's hours had been reduced to 20 hours per week, while her weekly hours had increased. (*Id.* ¶ 14.) Plaintiff told Ms. Ball that he did not request the alleged reduction in hours and that he believed Mr. Jasperson cut his hours to "teach him not to get sick again." (*Id.*)

- Plaintiff did not understand Ms. Ball's personal attacks against him because *Mr. Jasperson* was responsible for managing the store schedule. (*Id.* ¶ 13.)

- Ms. Ball subsequently apologized to plaintiff and told him to take better care of himself. (*Id.* ¶ 14.) Mr. Jasperson was away at a conference during this incident. (*Id.* ¶ 13.)

PAGE 2 -   MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

- Plaintiff thereafter called the Starbucks Compliance Helpline to lodge a complaint against Mr. Jasperson.  (*Id.* ¶ 15.)  Plaintiff reported "hostility and retaliation he was receiving at the hands of his supervisors and managers and that his hours were cut in retaliation [for] his medical condition."  (*Id.*)

- Plaintiff worked a few shifts after calling the Helpline; he was later confronted by Mr. Jasperson and Ms. Gray.  (*Id.* at ¶ 16.)  Ms. Gray was angry at plaintiff for calling the Helpline; she did not like the fact that plaintiff had "compliance issues" with Mr. Jasperson, her "top performing manager" who was being "groomed for [a] district manager position."  (*Id.*)

- Ms. Gray subsequently issued plaintiff a corrective action (a form of performance management) for not performing his duties and for questioning Mr. Jasperson's conduct.  (*Id.* ¶ 17.)  Plaintiff admitted that he had problems with Mr. Jasperson, but stated it was due to plaintiff's need for a set schedule.  (*Id.*)  Ms. Gray then requested that plaintiff provide a doctor's note to Partner Resources manager, Erin Cochell, to support his request for accommodation.  (*Id.* ¶¶ 17 and 18.)

- Plaintiff returned to work after the meeting.  (*Id.* ¶ 18.)  Approximately 30 minutes later, Ms. Gray "accosted plaintiff, angrily told plaintiff that the meeting had not gone well and ordered plaintiff to just go home."  (*Id.* ¶ 19.)  Plaintiff specifically asked Ms. Gray if he was being suspended or terminated and Ms. Gray told Plaintiff "no."  (*Id.*)

- Plaintiff returned to work on November 6, 2008, but was told by Ms. Ball that he was not on the schedule for the day.  (*Id.* ¶ 22.)  Plaintiff further discovered that he was not scheduled for the next two weeks.  (*Id.*)

- Plaintiff's doctor sent a facsimile Ms. Cochell on or about November 7, 2008, with a request for accommodation and job description form.  (*Id.* ¶ 24.)  Several days later, Ms. Gray telephoned plaintiff and asked him if he knew why he was sent home on

PAGE 3 -   MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

November 4; plaintiff told Ms. Gray he thought it was in retaliation for contacting the Helpline. (*Id.*) Gray told plaintiff to wait for a call from Partner Resources. (*Id.*)

- Ms. Cochell subsequently telephoned plaintiff and told him that his employment status remained undecided, but that Starbucks would pay him for 20 hours a week so that he would not lose his health benefits. (*Id.* ¶ 27.) Plaintiff's employment status remained open at that time. (*Id.* ¶ 27.)

- In a phone call on or about November 17, 2009, Ms. Cochell told plaintiff that his hours were cut as a result of the economic slowdown. (*Id.* ¶ 28.)

- On or about November 20, 2008, Mr. Jasperson called plaintiff and asked him to come in the following day. (*Id.* ¶ 30.) Plaintiff reported to work the next day and learned from an [unidentified] co-worker that he was being terminated. (*Id.* ¶ 31.) Mr. Jasperson later informed plaintiff that his termination was based on plaintiff being a "disruption" to other workers. (*Id.* ¶ 32.)

- "Plaintiff is informed and believes that defendants made and continue to make false statements to prospective employers regarding his work performance and history with Starbucks and general character preventing him from finding other employment." (Amended Complaint ¶ 35.)

**B.    Relevant Facts That Cannot Reasonably Be Disputed Show Plaintiff's Claims Against the Individual Defendants Are Not Supported.**

The allegations in the Amended Complaint do not support claims upon which relief can be granted against the individual defendants and thus they have been fraudulently joined.  The following additional facts, which cannot be reasonably disputed by plaintiff, further show that his claims against the individual defendants cannot be supported as a matter of law.   The consideration of such facts in opposition to a motion to remand is proper.   "While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond

PAGE 4 -    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island & Pacific Railroad Co.*, 378 F.2d 879, 881-82 (10th Cir.1967).  Thus, the court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964).  The defendant seeking removal is entitled to present facts showing that the joinder is fraudulent. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987).

1.    **The individual defendants and their roles at Starbucks during the relevant time period.**

As admitted in the Amended Complaint, Ms. Ball and Ms. Humphreys-Loving were plaintiff's ***peers***, not his "direct supervisors" as incorrectly stated throughout his Motion to Remand.[2]  (Amended Complaint ¶ 10.)  Plaintiff, Ms. Ball, and Ms. Humphreys-Loving all worked as hourly-paid shift supervisors at the 29th Street store.[3]  (Declaration of Lisa Ball ¶ 2; Declaration of Megan Humphreys-Loving ¶ 2.)  Neither Ms. Ball nor Ms. Humphreys-Loving had the ability or the authority to terminate his employment, to performance manage or discipline plaintiff, to affect his schedule or work hours, to approve or deny requests for time off or for leaves of absence, or to consider requests for reasonable accommodation.  (Ball Decl. ¶ 3; Humphreys-Loving Decl. ¶ 3.)  In addition, neither Ms. Ball nor Ms. Humphreys-Loving was responsible for, or had authority to, accept or approve doctors' notes or other justifications for

---

[2]  Ms. Ball still works as a shift supervisor at the 29th Street store.  (Ball Decl. ¶ 2.) Ms. Humphreys-Loving no longer works for Starbucks.  (Humphreys-Loving Decl. ¶ 2.)

[3]  Contrary to the job title, shift supervisors are not "supervisors" as that term is traditionally used in the employment context.  (Declaration of Ryan Jasperson ¶ 4.)  Shift supervisors are hourly non-exempt employees; they are one step above *baristas* in the retail store hierarchy and Starbucks considers them leaders for the store's baristas and expects them to set an example of appropriate workplace behavior.  (*Id.*)  To that end, shift supervisors perform some key functions in the store's daily operations, such as acting as store "cash controllers" (the partner responsible for recording and securing money, distributing tips, and making bank deposits during a certain shift) and "key holders" (the partner assigned to open or close the store on any given day).  (*Id.*) Significantly, however, shift supervisors *do not* have the authority to hire, performance manage, discipline, or terminate other partners.  (*Id.*)  At the store level, only store managers have the authority to initiate these types of supervisory actions.  (*Id.*)

PAGE 5 -    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

plaintiff's absences or to decide and/or approve leave under the Oregon Family Medical Leave Act. (*Id.*)

Ryan Jasperson was the store manager at the 29th Street store during plaintiff's employment there and was plaintiff's immediate supervisor. (*Id.* ¶ 2-3.) During the time relevant to this lawsuit, Sheila Gray was a district manager for Starbucks and Mr. Jasperson's immediate supervisor; Ms. Gray therefore also had supervisory authority over plaintiff during his employment at the 29th Street store. (*Id.* ¶ 5; Gray Decl. ¶¶ 2-3.)

Erin Cochell was a Partner Resources manager (*i.e.*, a human resources manager) for Starbucks during the times relevant to plaintiff's allegations.[4] (Declaration of Erin Cochell ¶ 2.) Ms. Cochell had no supervisory authority over plaintiff and she did not have the authority to terminate his employment or approve or deny requests for reasonable accommodation. (*Id.* ¶ 3.)

> **2.    Mr. Jasperson scheduled plaintiff for regular shifts according to plaintiff's self-reported – but undocumented – scheduling requirements and granted plaintiff's request for time off.**

Mr. Jasperson accepted plaintiff's transfer to the 29th Street store and, upon his transfer, Mr. Demont became a shift supervisor. (*Id.*) Mr. Jasperson was not told that Mr. Demont had diabetes or that he needed any reasonable accommodation for his condition, including accommodations regarding his work schedule, at the time of transfer. Shortly thereafter, plaintiff informed Mr. Jasperson that he could nor work opening or closing shifts because of his insulin schedule, and that he needed consistent, mid-day shifts.[5] (Jasperson Decl. ¶ 7.) Based solely on plaintiff's request and self-reported need for accommodation, Mr. Jasperson stopped scheduling plaintiff for opening or closing shifts. (*Id.*) Mr. Jasperson provided plaintiff with a consistent

---

[4] Mr. Jasperson still works as a Starbucks store manager, but he now manages the Clackamas Crossing store in Portland. (Jasperson Decl. ¶ 2.) Neither Ms. Gray nor Ms. Cochell currently work for Starbucks. (*See* Gray Decl. ¶ 2 and Cochell Decl. ¶ 2.)

[5] One of the job requirements of a shift supervisor is availability to open and/or close the store. (*Id.* and Exhibit 1, shift supervisor job description.)

PAGE 6 -    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

schedule of mid-day shifts, even though this is not a typical schedule for shift supervisors. (*Id.* and Exhibit 2.) (Jasperson Decl. ¶ 6.)

Plaintiff missed **two days** of work (October 21 and 22, 2008) because of alleged bronchitis. (*See* Cochell Decl. ¶ 2 and Exhibit 3, Helpline call record). Plaintiff also asked Mr. Jasperson for days off on October 23 and 24, 2008, so plaintiff could "celebrate" the one-year anniversary of his diabetes diagnosis. (Jasperson Decl. ¶ 8.) These absences, according to plaintiff, were unrelated to any illness or medical treatment. (*Id.* and Ex. 2.) Mr. Jasperson scheduled plaintiff to work on plaintiff's next available work day, October 25th. (*Id.*) Mr. Jasperson worked nearly 8 hours that day, and over 5.5 hours on Sunday, October 26th. (*Id.*)

Plaintiff's scheduled hours *before* and *after* missing work because of his purported bronchitis are consistent. (Ex. 2.) From October 1 through October 18, 2008, Mr. Demont worked between 5.45 to 8.1 hours per day, with most of his shifts falling within the 7 to 8 hour range. (*Id.*) Upon his return to work on October 25th, plaintiff worked: 7.93 hours on October 25, 5.57 hours on October 26, 7.67 hours on October 28, 8.09 hours on October 30 and 4.55 hours on October 31, 2008. (*See id.*)

Plaintiff called Starbucks compliance Helpline on October 28, 2008, alleging that Ms. Ball and Ms. Humphreys-Loving made "negative" comments about him not opening and that he thought Mr. Jasperson cut his hours for being sick for two days. (Exhibit 2.)

### 3.   Plaintiff brings a weapon to work and displays it during his corrective action meeting with Mr. Jasperson and Ms. Gray.

Mr. Jasperson and Ms. Gray attended the Starbucks Global Leadership Conference from October 26 to October 30, 2008. (Jasperson Decl. ¶ 10; Gray Decl. ¶ 4.) Upon their return on November 1, 2008, Mr. Jasperson and Ms. Gray scheduled a November 4 meeting with plaintiff to discuss some concerns they had regarding his performance and to deliver a written corrective action to memorialize those concerns. (Jasperson Decl. ¶ 10; Gray Decl. ¶ 4.) Significantly, the

PAGE 7 -   MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

corrective action was discussed and agreed upon prior to Ms. Gray and Mr. Jasperson leaving for the Starbucks conference and before plaintiff called the Helpline.  (*Id.*)

Mr. Jasperson and Ms. Gray met with Plaintiff at the 29th Street store on November 4, as planned.  (Jasperson Decl. ¶ 10; Gray Decl. ¶ 5.)  As advised by Partner Resources manager Erin Cochell, Ms. Gray first met alone with plaintiff to discuss the concerns he expressed in his Helpline call, so she could understand the nature of his complaints first-hand and determine if the basis for the corrective action was valid.  (Gray Decl. ¶ 6; Cochell Decl. ¶ 5).  Mr. Demont relayed his Helpline concerns to Ms. Gray and she informed him that Starbucks would look into his concerns.  (Gray Decl. ¶ 6).  But because plaintiff's complaints did not affect the performance-based reasons for his corrective action, Ms. Gray determined that he should still be held accountable for his workplace behavior.  (*Id.*)  Accordingly, Mr. Jasperson joined the meeting so they could discuss the corrective action.  (Jasperson Decl. ¶ 10; Gray Decl. ¶ 6.)

Throughout the meeting, plaintiff was visibly frustrated and angry, he consistently shifted in his chair and fidgeted.  (Jasperson Decl. ¶ 10; Gray Decl. ¶ 7.)  Only a few minutes into the meeting, Mr. Jasperson noticed that plaintiff had removed a utility or "Swiss Army"-style knife from his pocket and started to play with it.  (Jasperson Decl. ¶ 10.)  Disturbed by plaintiff's behavior, Mr. Jasperson quickly moved away from plaintiff.  (*Id.*)  Not seeing the knife, and believing that Mr. Jasperson was merely uncomfortable, Ms. Gray concluded the meeting and asked plaintiff to sign the corrective action.  (Gray Decl. ¶ 7.)  Shortly thereafter, she asked plaintiff to return to the floor and finish his shift.  (*Id.*)

After plaintiff left the meeting, Mr. Jasperson explained to Ms. Gray that he observed plaintiff toying with the knife.  (Jasperson Decl. ¶ 11; Gray Decl. ¶ 7.)  Concerned over plaintiff's demeanor and display of the knife, 9-1-1 was called and a police officer was dispatched to the 29th Street store.  (Jasperson Decl. ¶ 12.)  Shortly thereafter, Ms. Gray sent plaintiff home, informing him that bringing a knife to work was inappropriate and that he could

PAGE 8 -    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

not do so again, and that she needed time to determine what, if any, consequences would result from plaintiff's actions.  (Gray Decl. ¶ 7.)

Because Mr. Jasperson was leaving the next day to compete in an Ironman Triathlon in Florida, Ms. Gray informed him that she would follow up with plaintiff in Mr. Jasperson's absence.  (Jasperson Decl. ¶ 11; Gray Decl. ¶ 8.)  Plaintiff was not terminated at that time and Mr. Jasperson and Ms. Gray did not discuss plaintiff's employment status.  (Jasperson Decl. ¶ 11; Gray Decl. ¶ 8.)  As Mr. Jasperson left for his triathlon, he understood plaintiff would be returning to work on his next scheduled work day.  (Jasperson Decl. ¶ 12.)

### 4.    Plaintiff yells at and belittles Ms. Gray during a telephone conversation; she instructs him not to return to work until further notice.

Ms. Gray called plaintiff on or about November 5, 2008 (the day after the corrective action meeting), and asked him if he knew why he was sent home the day before.  (Gray Decl. ¶ 9.)  Ms. Gray explained to plaintiff that the decision was based on his behavior during the corrective action meeting, particularly his poor judgment in bringing a knife to work and handling it during a meeting with his supervisors.  (*Id.*)  Ms. Gray had no intention of separating plaintiff's employment at that time.  (*Id.*)  In fact, she explained that plaintiff should work his remaining shifts that week and that they would find him shifts at the 29th Street Store for the following two weeks.  (*Id.*)

Plaintiff quickly became hostile with Ms. Gray.  (*Id.* ¶ 10.)  As they talked, plaintiff yelled at Ms. Gray and his voice continued to escalate as he got more and more irate.  (*Id.*)

Plaintiff's inappropriate treatment of Ms. Gray—his district manager—not only personally upset Ms. Gray to the point of tears, it lead her to question how plaintiff would react to Mr. Jasperson, his co-workers, and customers if she permitted him to return to the store.  (*Id.* ¶ 11.)  Accordingly, Ms. Gray told plaintiff that she was no longer comfortable with his being at the store and instructed him not to go back until further notice.  (*Id.*)  She told him that Ms. Cochell would be in touch with him and then ended the call.  (*Id.*)

PAGE 9 -    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Ms. Cochell contacted plaintiff shortly after his call with Ms. Gray. (Cochell Decl. ¶ 9.) Ms. Cochell explained that she understood, through a conversation with Ms. Gray, that he had been instructed not to return to work and that she (Ms. Cochell) was reaching out to assess whether he was in the mindset to return. (*Id.*) Plaintiff then informed Ms. Cochell that he required reasonable accommodation for his diabetes and that he and could not work opening shifts and required a "set schedule." (*Id.*) Ms. Cochell asked plaintiff to provide her with a medical verification from his doctor, so she could give the information to the partners at the corporate office in Seattle who determine whether Starbucks can provide reasonable accommodation, when requested. (*Id.*) Plaintiff also shared his concerns about the store environment and his work hours and asked to be transferred to a different store. (*Id.*) Finally, plaintiff told Ms. Cochell that he was concerned he would lose his medical benefits. (*Id.*) Ms. Cochell told him Starbucks would pay him for 20 hours of work during the week of November 3, 2008 (the week he was scheduled to work but sent home) so his benefits would be maintained. (*Id.*)

She also, truthfully, told him that his employment status was unknown at that time. (*Id.* ¶ 10.) She explained that his coaching conversation and subsequent outburst raised concerns about his ability to return to the store. (*Id.*) As he had with Ms. Gray, Mr. Demont became combative with Ms. Cochell and raised his voice. (*Id.*) He invited Ms. Cochell to speak with three partners in the store, including barista Jacqueline Cameron and Ms. Ball, who would allegedly verify his claims of mistreatment. (*Id.*) Ms. Cochell did so; none of them substantiated his claims. (*Id.*) Rather, they all voluntarily and without questioning from Ms. Cochell, expressed concerns about plaintiff's behavior in the workplace. (*Id.*) None of these concerns were related to plaintiff's diabetes. (*Id.*)

On November 7, 2008, plaintiff's doctor sent Ms. Cochell a note regarding plaintiff's diabetes and his "modified work restrictions." (Cochell Decl. ¶ 7 and Exhibit 4, doctor's note dated November 7, 2008). The note stated that plaintiff's diabetes is controlled with insulin

PAGE 10 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

therapy and that plaintiff required "some regularity" in his work schedule so plaintiff could "best control his blood sugars with insulin injections." (*Id.*)  Although plaintiff told Mr. Jasperson that he could not work opening shifts, plaintiff's doctor stated that plaintiff was able to work *either* "opening shifts (4AM to 12PM) *and* mid-day shifts (8AM to 4PM)" *or* "mid-day *and* closing shifts "12PM to 8:15PM)." (*Id.*)  Before Ms. Cochell had an opportunity to forward this information to the Starbucks corporate office, she learned from regional director Michelle Cain that she and Ms. Gray had decided to terminate plaintiff's employment. (*Id.*)

Mr. Jasperson was competing in the Ironman Triathlon in Florida during this time (November 5 through 12, 2008). (Jasperson Decl. ¶ 13.)  During this period, Mr. Jasperson did not communicate with Ms. Gray, Ms. Cochell or anyone at Starbucks about plaintiff's employment. (*Id.*; Gray Decl. ¶ 12.)  Upon Mr. Jasperson's return or shortly thereafter, Ms. Gray informed Mr. Jasperson that plaintiff was being terminated and asked Mr. Jasperson, as plaintiff's direct supervisor, to deliver the news. (Jasperson Decl. ¶ 12; Gray Decl. ¶ 12.)  Mr. Jasperson met with plaintiff on November 17, 2008, to terminate plaintiff's employment. (Jasperson Decl. ¶ 13.)  Mr. Jasperson explained that the decision was based on plaintiff's behavior during the November 4 corrective action meeting, bringing a knife to work and displaying it during the meeting, and his subsequent hostile treatment of Ms. Gray. (*Id.*)

## III.  <u>ARGUMENT</u>

**A.    Because the Individual Defendants Have Been Fraudulently Joined, Complete Diversity Exists and Remand Is Improper.**

A valid removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) generally "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001).  However, an exception to the requirement of complete diversity exists where, as here, nondiverse defendants are fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).  When joinder of a nondiverse party is a sham or fraudulent, a district court may disregard the

PAGE 11 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

citizenship of a nondiverse party named in the complaint and retain diversity jurisdiction. *Plute v. Roadway Package Sys., Inc.,* 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Joinder of a non-diverse defendant is fraudulent, *and the defendant's presence in the lawsuit ignored for purposes of determining diversity*, when the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state. *Morris,* 236 F.3d at 1067. As set forth below, plaintiff cannot sustain any claim for relief. Against the individual defendants; they are fraudulently joined and plaintiff's motion should be denied.

**B.     Plaintiff Cannot Sustain a Valid Aiding and Abetting Claim Against the Individual Defendants; They Are Therefore Fraudulently Joined.**

Plaintiff's fifth claim for relief alleges that individual defendants Gray, Jasperson, Ball, Humphreys-Loving, and Cochell each "aided and abetted" in discrimination, harassment, and retaliation against plaintiff. However, under well settled Oregon law, plaintiff does not have a cognizable aiding and abetting claim against any of the individual defendants.[6]

**1.     Plaintiff's Amended Complaint fails to allege sufficient facts to support a plausible aiding and abetting claim against any of the individual defendants.**

In deciding whether a cause of action is stated, the Ninth Circuit has declared that it will "look only at plaintiff's pleadings to determine removability." *Richey*, at 1318, citing *Gould v. Mutual Life Insurance Co. of New York*, 790 F.2d 769, 773 (9th Cir. 1986). *See also McCabe*, 811 F.2d at 1339 ("If the plaintiff fails to state a cause of action against a resident defendant * * * the joinder of the resident defendant is fraudulent.") (emphasis added); *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001) (fraudulent joinder exists if the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state.)

Plaintiff's Amended Complaint is devoid of any factual allegations sufficient to support

---

[6] Plaintiff's aiding and abetting claim against Starbucks is likewise meritless. (*See* Defendants' Motion to Dismiss, Docket No. 6.)

PAGE 12 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

a plausible aiding and abetting claim against any of the individual defendants.  Without any supporting factual allegations, plaintiff baldly asserts, "Defendants participated in and assisted each other in ongoing discrimination, harassment and retaliation" (Amended Complaint ¶ 67) and that defendants "and aid[ed] each other in efforts to perpetuate ongoing discrimination, harassment and retaliation" against Plaintiff."   (Amended Complaint ¶ 68) (emphasis added). These conclusory allegations are insufficient to state a claim for aiding and abetting.

A complaint is subject to dismissal unless it contains *facts* supporting the allegation. *Huang* at 334.  As set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to a relief" requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact . . . .
>
> Because the plaintiffs have not nudged their claims across the line from conceivable to plausible their complaint must dismissed.

*Twombly*, 550 U.S. at 555-556, 570 (internal citations omitted).  The Court in *Twombly* stated that plaintiffs must plead "*enough facts to state a claim to a relief that is plausible on its face.*" (*Id*.) (Emphasis added.)

This sentiment was reinforced by the Supreme Court in 2009 in *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009).  This case involved a Pakistani Muslim alleging the FBI deprived him and other detainees of constitutional protections because of their race, religion, and national origin.  *Iqbal* extended the *Twombly* decision to "*all civil actions . . . antitrust and discrimination suits alike.*"  129 S. Ct. at 1953 (emphasis added).  The court in *Iqbal* explained the plausibility standard as follows:

PAGE 13 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

> Under Federal Rule of Civil Procedure 8(a)(2) a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief.

*Id.* According to the Court in *Iqbal*, a pleading that offers:  (1) labels and conclusions; (2) a formulaic recitation of the elements of the cause of action; or (3) "naked assertion[s]" lacking "further factual enhancement" will fail the standard.  The Court went on to state:

> That [a plaintiff's] complaint is sufficiently well-pleaded because it claims that [the defendant] discriminated against him on account of [plaintiff's] religion, race, and/or national origin is insufficient.

*Id.* at 1954.

The pleading standard set forth in *Iqbal* and *Twombly* applies to motions to remand. *Allen v. Monsanto Company*, 2009 WL 426546 (N.D. Fla. 2009); *Tippen v. Republic Fire and Casualty Ins. Co.*, No. 06-7701, 2007 WL 4219352 (E.D. La. 2007) (merging the fraudulent joinder and 12(b)(6) analyses, agreeing that the standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Rule 12(b)(6)); *Positive Results Mktg. v. Buffalo-Lake Erie Wireless Sys. Co.*, 2008 U.S. Dist. LEXIS 39924 (M.D. Pa. 2008); *Bush v. Nationwide Mut. Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 61039 (S.D. Miss. 2008). The facts asserted by plaintiff in his Amended Complaint fail to establish a plausible aiding and abetting claim against any of the individual defendants.

No federal or state court has defined what conduct constitutes "aiding," or "abetting" under ORS 659A.030(1)(g) or its predecessor, nor does the statute itself provide a definition.  It is clear, however, that "aiding" and "abetting" requires a level of concerted action among the alleged wrongdoers.  Indeed, Oregon courts have consistently held that in order to find an individual liable for aiding, assisting, or abetting in an ***intentional tort*** (such as discrimination or harassment), the individual must ***knowingly participate*** in the other person's tortious act ***and either intend that the tortious act occur or know that it will occur***.  *See e.g.*, *Walthers v. Gossett*, 148 Or. App. 548, 552-553, 941 P.2d 575, 578 (1997) (liability under "aiding and

PAGE 14 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

assisting" theory of battery requires knowledge or intent on the part of the aider or abettor that tortious conduct will occur) (emphasis added); *Brown v. Far West Fed.,* 66 Or. App. 387, 390, 674 P.2d 1183 (1984) (to be liable under "aiding" and "assisting" theory, **the defendant must have "acted with the requisite mental state - i.e., it must have intended** the 'harmful or offensive contact.'") (emphasis added); *Gymnastics USA v. McDougal,* 92 Or. App. 453, 458, 758 P.2d 881, *rev. den.,* 307 Or. 77, 763 P.2d 731 (1988) ("acquiescence to an intentional tort of another is not a sufficient basis for liability; to be liable as a co-actor in the commission of an intentional tort *a person must understand that a tort is being or will be committed by the other person* when he assists or encourages that person") (emphasis added).

Plaintiff's Amended Complaint contains no facts or plausible allegations to show that defendants Gray, Jasperson, Ball, Humphreys-Loving, or Cochell *knowingly participated* in discrimination, harassment or retaliation committed by another individual defendant with the *intent* of committing a discriminatory act or with *knowledge* that a discriminatory act would occur. Plaintiff's failure to make such allegations distinguishes his Amended Complaint from that in *Gaither v. JQH Hotels*, Opinion and Order, Case No. CV 09-629-MO, on which plaintiff relies heavily. In *Gaither* the plaintiff alleged that in initially named supervisor "knew, or should have known of [the] plot to get Mr. Gaither fired…[and] was complicit in it." (Opinion and Order p. 3, Exhibit 2 to the Declaration of Mitra Shahri in Support of Plaintiff's Motion to Remand.) Here, there is no allegation—or plausible suggestion—of a plot, that any of the individuals knew of such plot, or were complicit in the plot. *See generally* Amended Complaint. Plaintiff has not adequately plead an aiding and abetting claim against the individual defendants; they are fraudulently joined and remand is improper. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n. 12 (9th Cir.1989) (propriety of removal must be considered based upon the complaint at the time of the removal; it is inappropriate to consider proposed amendments to the complaint when attempting to determine if a particular defendant is a sham defendant for purposes of diversity jurisdiction.)

PAGE 15 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

At best, plaintiff alleges individual wrongful acts—which are not cognizable under an aiding and abetting theory. *Sniadoski v. Unimart of Portland*, 1993 WL 797438, *2 (D. Or. 1993) (an aiding and abetting claim against an active participant "makes little sense").

Plaintiff has not plausibly alleged a claim for a violation of ORS 659A.030(g) against the individual defendants. They are fraudulently joined; remand is improper.

> 2. **Under *Schram v. Albertson's, Inc.* and *McPhail v. Milwaukie Lumber Company*, plaintiff's Amended Complaint fails to state a claim upon which relief may be granted against the individual defendants, and they are is accordingly fraudulently joined.**

Plaintiff's Motion to Remand relies significantly upon *Schram v. Albertson's* and the recitation of *Schram* in the *Gaither* opinion. Defendants respectfully disagree with the *Gaither* court's assessment of *Schram* and corresponding failure to consider *McPhail v. Milwaukie Lumber*, two opinions which, taken together, reasonably hold that no remedy against individually named defendants under an aider and abettor theory.

In *Schram*, a former employee sued her former employer and her supervisors for gender discrimination, sexual harassment, and other claims. Her complaint included claims against Albertson's and her supervisors for gender discrimination in violation of ORS 659.030. She alleged that her supervisors "aided, abetted, incited, compelled, or coerced a doing of acts forbidden under ORS 659.101." The only remedies that she sought were front pay, back pay, reinstatement, and attorneys fees and costs. 146 Or. App. at 422-423 The Court of Appeals affirmed the Circuit Court's dismissal of the claims against the individual supervisors because, as a matter of law, they could not be held liable. In affirming dismissal, the court stated:

> Assuming without deciding that an award of front pay is a legally cognizable equitable remedy under ORS 659.121(1), we conclude that the *legislature would not have intended that kind of relief, nor any other type of lost wages, to be awarded as an equitable remedy against* Sturgill and Cooper on the facts alleged in this case. In the context of ORS 659.121(1), equitable relief is in the nature of restitution or to restore the position of the plaintiff to what she would have enjoyed but for the discrimination. The concept of restitution implies that the actor who is responsible for the restitution is under a duty to return what has been deprived

PAGE 16 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

from the injured party or pay its equivalent value to the injured party. *Johnson v. Steen,* 281 Or. 361, 372, 575 P.2d 141 (1978)

Here, plaintiff seeks to be compensated only for the wages lost because of the discrimination. The nature of the relief to which she is entitled is dictated by the peculiar circumstances of her relationship with Sturgill and Cooper and their relationship to Albertson's. Albertson's is a large company with many supervising employees, and Cooper and Sturgill are low-level supervisors. As co-employees with plaintiff, Sturgill and Cooper were not responsible for the payment of plaintiff's wages, and the ultimate responsibility for the payment of lost wages is with Albertson's. It may be that Sturgill's and Cooper's wrongdoing has caused plaintiff to incur damages, but *Albertson's is the entity that benefited from not having to pay wages to plaintiff.* Moreover, requiring lost wages to be paid by Sturgill and Cooper departs from the idea of restoration of plaintiff's employment status as it existed before she left her job *and is more in the nature of sanctions or punishment.* Under the circumstances, such an award would belie the kind of "equitable" remedies that the legislature would have contemplated against co-employees like Sturgill and Cooper. For these reasons, we conclude that the legislature could not have intended that plaintiff's equitable remedies under ORS 659.121(1) include judgments against Sturgill and Cooper for either back or front pay. The trial court did not err in granting Sturgill and Cooper summary judgment on the ORS 659.030 claims *for the reason that plaintiff does not seek any remedy against them that is available under the statute on the facts alleged.*

146 Or. App. at 423-424 (emphasis added).

Significantly, at the time *Schram* was decided, ORS 659.030 (now ORS 659A.030, as amended) and ORS 659.121 (now ORS 659A.885, as amended) did not afford an employee claiming discrimination in employment on the basis of gender, race, age, national origin, or marital status, the right to recover punitive damages or compensatory damages against their employer, thus the *Schram* court did not—and could not have—ruled on whether compensatory and punitive damages were available against individual defendants under an aiding and abetting theory.[7] This issue was squarely dealt with—and rejected, however, in *McPhail.*

---

[7] ORS 659A was amended in 2007 by House Bill 2260 to afford employees claiming employment discrimination on the basis of sex, race, color, religion, age, sexual orientation or marital status the right to recover punitive damages and compensatory damages, in addition to back pay, front pay, and reinstatement. *See* ORS 659A.885(3). *See also 2007 Oregon Legislation Highlights*, Oregon State Bar, Continuing Legal Education publications, at
(continued . . .)

PAGE 17 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

In *McPhail*, the plaintiff sued the employer and the individuals under ORS 659.410 and 659.425 for disability and workers compensation based discrimination, for which compensatory and punitive damages were then available under ORS 659.121.[8]  The Oregon Court of Appeals applied its decision in *Schram v. Albertson's* to dismiss claims brought against individual supervisors for discrimination on the basis of disability (as alleged here) and invocation of the workers' compensation system.  In the underlying case, the plaintiff pled that the supervisors were liable under an aider or abettor theory.  The plaintiff's amended complaint sought economic damages of $235,000 and damages for, *inter alia*, "stress, anxiety, depression, worry anger and sleeplessness" in the amount of $400,000 against the employer, and against the individual managers.[9]

_____

(. . . continued)

page 17-5, noting that HB 2260 amends ORS 659A.885(3) to include compensatory damages (or $200, whichever is greater) and punitive damages for unlawful employment practices related to race, color, religion, sex, sexual orientation, national origin, marital status, or age.  Equitable relief, including injunctions, back pay, and reinstatement, and attorneys fees, which were previously available, remain available.  Before these amendments, punitive damages and compensatory damages were also available to employees claiming employment discrimination on the basis of workers' compensation discrimination, reporting of criminal activities.  *See, e.g.,* ORS 659A.040, 659A.043, 659A.046,659A.069, 659A.100-145, 659A.230.  A true copy of HB 2260 is attached as Exhibit 1 to the Declaration of Leah C. Lively in Opposition to Motion to Remand.

[8]  The claims in *McPhail* arose in 1995.  *See McPhail*, 165 Or. App. at 599-600.  Attached as Exhibits 2 and 3 to the Lively Decl. are the 1993 and 1995 versions of ORS 659.121, and ORS 659.400 through 659.425.

[9]  A true copy of the amended complaint filed in the circuit court in *McPhail v. Milwaukie Lumber Company, et al.,* is attached as Exhibit 4 to the Lively Decl.  As reflected in the amended complaint, in addition to his employer, Milwaukie Lumber Company, plaintiff McPhail sued Steve Morse and Patrick Fitzgerald, who were, respectively, a substantial owner, and a manager employed by the employer.  Among other things, the complaint alleges that Milwaukie Lumber fired plaintiff in violation of ORS 659.410(1), retaliation for utilization the workers' compensation system, and/or ORS 659.425(1), disability discrimination.  Both of the individually named defendants are alleged to have "aided, abetted, induced, incited, encouraged, and caused Milwaukie Lumber to fire plaintiff."  *See, e.g.,* ¶¶ 8.c and 15.b.  The aiding and abetting allegations are incorporated by reference into the claims under ORS 659.410, and ORS 659.425.  *See* ¶¶ 8 and 16.  The only relief sought against the individuals was economic damages and damages for stress, pain, anxiety, worry, etc.  *See* amended complaint, ¶¶ 9,12, 16, and prayer, paragraphs A) and B) at pages 6-7.  Pursuant to FRE 201, defendants request that this Court take judicial notice of the Amended Complaint that was at issue in *McPhail*.  *See* FRE 201 (b)(2) and (d), *Green v. Warden*, 699 F2d 364-369 (7th Cir. 1983) (federal courts may take
(continued . . .)

PAGE 18 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

The court record in *McPhail* shows that the "Questions Presented on Appeal" were as follows:

1. "Are managers and agents of a corporate employer personally liable for wrongful discharge *and statutory claims* when they aid, abet, and cause the employer to commit tortious wrongful discharge or *an unlawful employment practice.*"

2. "Should this court overrule its recent holding that managers and agents of a corporate employer are not personally liable for *statutory* or common law wrongful discharge claims against the corporate entity?"

(*See*, "Questions Presented on Appeal," excerpts from the appellate briefs filed with the Oregon Court of Appeals by the parties in *McPhail*, attached to Lively Decl. as Exhibit 5, at page 4, paragraph 9 thereof, and Exhibit 3, at page 4, paragraph 9 thereof.) (Emphasis added.)[10]

Answering these questions with a resounding "No," the Court of Appeals affirmed the trial court decision dismissing the individual defendants. (*McPhail*, 165 Or. App. at 598.) In affirming the judgment dismissing the individual defendants, the court stated:

Plaintiff's claims against the individual defendants are based on aider and abettor liability and general agency principles. He recognizes that *Schram v. Albertson's* 146 Or. App. 415, 934 P.2d 483 (1997), *rev. dismissed* 328 Or 366, 328 Or 419 (1999), is against his position but asks that we overrule that case. *We decline to do so and therefore affirm the judgment as to those defendants.*

165 Or. App. at 598, n. 1. (Emphasis added)

Under *McPhail*, employees, such as the individual defendants here, who are sued under an aider or abettor theory are not personally liable, and therefore a claim may not be asserted

---

(. . . continued)

judicial notice of proceedings in other courts "both within and outside the federal judicial system"); *United States v. Rey*, 811 F2d 1453, 1457 n.5 (11th Cir 1987) (court may take judicial notice "of the records of inferior courts").

[10] Pursuant to FRE 201, defendants request that this Court take judicial notice of these pages from the briefs filed with the Oregon Court of Appeals. *See* FRE 201 (b)(2) and (d), *Green v. Warden*, 699 F2d 364-369 (7th Cir. 1983) (federal courts may take judicial notice of proceedings in other courts "both within and outside the federal judicial system"); *Scotty's Contracting and Stone, Inc. v. United States*, 326 F3d 785, 789-790, n.1 (6th Cir. 2003) (taking judicial notice of page from brief submitted as part of proceedings in different case); *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (taking judicial notice of briefs filed with state appellate court.).

PAGE 19 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

against them as a matter of Oregon law.[11]  Moreover, since *McPhail* was decided in 2000, no reported Oregon state court decision has ever imposed liability against an individual supervisor based upon an aider and abettor theory.  Nothing has changed the settled state of the law under *McPhail* and *Schram* since they were decided over a decade ago.  There is thus no possibility, based on the claim that is alleged, that personal liability may be imposed upon the individual defendants.

### 3.    The legislative history of ORS 659A supports shows that liability for aiding and abetting does not extend to individual employees.

It is well established in Oregon that when the legislature selects and enacts a statute that has been judicially construed, the legislature has adopted that construction unless a contrary intent clearly appears.  *Hiersche v. Seamless Rubber Company*, 255 F. Supp. 682, 685 (D. Or. 1963); *State v. Raper*, 174 Or. 252, 255 (1944) (the legislature, in enacting the law, was familiar with the construction that the court had placed on it, and intended a like construction).  The Ninth Circuit has also adopted this view:

> [W]hen a legislature borrows an already judicially interpreted phrase from an old statue to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase.

*Zimmerman v. State Dept. of Justice*, 170 F.3d 1169, 1181 (9th Cir. 1999), citing *Long v. Director, Office of Workers' Comp. Programs*, 767 F.2d 1578, 1581 (9th Cir. 1985).

In 2007 the legislature enacted HB 2260, which amended ORS 659A.885(3) to include "compensatory damages or $200, whichever is greater, and punitive damages" as available remedies for unlawful employment practices under ORS 659A.030.  The previously available right to equitable relief was retained.  Prior to this amendment, the right to recover compensatory

---

[11] This conclusion is particularly true here because plaintiff alleges *disability* discrimination, which is made unlawful under ORS 659A.112, which provides no aider or abettor liability. Plaintiff has, however, pled a violation of ORS 659A.030 "Discrimination because of race, color religion, sex, sexual orientation, national origin, marital status or age[.]"  Plaintiff has not alleged any facts supporting a claim based on one of the enumerated protected categories.

PAGE 20 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

and punitive damages was limited to violations of ORS 659A relating to discrimination because of use of the workers' compensation system (ORS 659A.040), workers' compensation reinstatement and reemployment (ORS 659A.043, and 659A.046), exercise of rights for group health benefits continuation (ORS 659A.063), disability discrimination (ORS 659A.100-145), and reporting of criminal activities (ORS 659A.230).

At the time HB 2066 was enacted, ORS 659A had already been interpreted in *Schram* and *McPhail*. The legislature did not express intent contrary to the *Schram* and *McPhail* holdings when enacting HB 2066. Accordingly, all that occurred was the extension of the right to recover punitive and compensatory damages against *employers* for unlawful employment discrimination on the basis of age, race, gender, national origin, or religion.

The legislature's intent to retain *McPhail* and *Schram* and to not extend a right of recovery of damages against an individual employee sued as an aider and abettor, is also shown by the provisions of ORS 659A.885(6). Oregon courts have repeatedly held that the use of terms in one section of a statute, but not in another section, indicates a purposeful omission by the legislature. *King Estate Winery, Inc. v. Dept. of Revenue,* 329 Or. 414, 422-423 (1999); *Laferty v. Newbry*, 200 Or. 685, 689-690 (1954); *Jordan v. SAIF Corporation (In re Jordan),* 343 Or. 208, 217-218 (2007). *See also, Royal Aloha Partners v. Real Estate Division*, 59 Or. App. 564, 568-569 (1982) ("Inclusion of a specific matter in a statute usually implies a legislative intent to exclude related matters not mentioned."). Significantly, the Oregon legislature retained the language of ORS 659A.885(6) without change when it enacted HB 2260. ORS 659A.885(6), specifically affords plaintiffs the right to recover damage relief against an individual aider or abettor in cases of *public accommodation* discrimination. However, the legislature never extended that same specific right of recovery against an individual who allegedly aids or abets *employment* discrimination. Section 659A.885(6) provides in relevant part:

PAGE 21 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Any individual against whom any distinction, discrimination or restriction on account of race, color, religion, sex, national origin, marital status or age, if the individual is 18 years of age or older, has been made by any place of public accommodation, as defined in ORS 659A.400, by any person acting on behalf of the place or by any person aiding or abetting the place or person in violation of ORS 659A.406 may bring an action against the operator or manager of the place, *the employee or person acting on behalf of the place or the aider or abettor of the place or person*.   Notwithstanding subsection (1) of this section, in an action under this subsection:

    (a)    The court may award, in addition to the relief authorized under subsection (1) of this section, *compensatory and punitive damages;*

    (b)    The operator or manager of the place of public accommodation, the *employee or person acting on behalf of the place, and any aider or abettor shall be jointly and severally liable for all damages awarded in the action*.

This specific language imposing damage liability on an individual "aider or abettor" in cases of public accommodation discrimination **has never been incorporated into ORS 659A.885(1)–(5),** which govern the relief available for claims of employment discrimination.  Under Oregon's rule of statutory construction set forth in *King Estate Winery, Inc.*, 329 Or. 422-423, *Laferty,* 200 Or. At 689-690 and *In re Jordan,* 343 Or. at 217-218, the only conclusion that can be drawn is the Oregon legislature intentionally omitted the language in ORS 659A.885(6) from ORS 659A.885(3) and therefore intended to shield individual employees from liability for alleged "aiding and abetting."

The conclusion that the legislature intentionally failed to provide for damage liability against an individual employee sued as an aider and abettor is also mandated by ORS 174.010, which requires that the court not insert what the legislature omitted.[12]   Here, the legislature

---

[12] ORS 174.010 provides:

In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.

(continued . . .)

PAGE 22 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

expressly provided for recovery of punitive and compensatory damages against an aider and abettor in the context of public accommodation discrimination.  It made no provision for such recovery against an aider or abettor for employment discrimination.  Accordingly, the language and context of the statute, and its legislative history, again confirm that *McPhail* and *Schram* set forth the settled law in Oregon concerning the absence of liability of an individual supervisor who allegedly aids or abets employment discrimination.

Any argument that the 2007 amendments extended compensatory damage and punitive damage liability to individual supervisors sued as aiders or abettors is also foreclosed by the well-established principle in Oregon law that "a statute imposing a new liability, where otherwise none would exist, must be construed strictly." *Rapp v. Multnomah County*, 77 Or. 607, 610 (1915); *Hillman v. North Wasco County PUD*, 213 Or. 264, 310 (1958).13[1]  Here, the legislature imposed new damage liability on *employers* for compensatory and punitive damages that did not exist before with respect to claims for discrimination on the basis of age, race, color, gender, religion, sexual orientation and national origin.  Plaintiff's argument that the imposition of this new and expanded liability on employers should also now extend to individual supervisors who are sued as aiders or abettors, flies in the face of the settled rule of Oregon law that a statute which imposes a new liability must be strictly construed.

4.    **Several court have recognized that individual supervisors in discrimination cases are fraudulently joined.**

Oregon courts recognize when that when – as is the case here – a plaintiff can pursue claims against an employer, the employer is the proper defendant and aiding and abetting claims against individuals cannot be sustained:

_____

(. . . continued)

13[1] In *Maulding v. Clackamas County*, 278 Or. 359, 364 (1977), the court reversed an unrelated point in *Hillman v. North Wasco County,* which concerned orders granting new trials.

PAGE 23 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

> Miller asserts a claim based on ORS § 659A.030(1)(g). Under that statute, it is an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." The only two defendants are Lytle and the District, but Miller asserts there are a number of employees of the District who aided and abetted the conduct complained of and specifically that Pugh had some input into the decision to terminate. There is no need for the claim **as the District is the proper defendant for the conduct of its employees.** See ORS § 30.265(1). *Miller may pursue his state law claims against the District for the actions of its employees and the aider and abettor claim serves no purpose under the circumstances of this case.* The motion for summary judgment is granted as to this claim.

*Miller v. Deschutes Valley Water District*, 663 F. Supp. 2d 1001, 1010 (D. Or. 2009) (emphasis added). In *Zasada v. Gap, Inc.*, 2006 WL 2382514 (D. Or.), Judge Brown denied a motion to remand on grounds that two managers, who are non-diverse, were fraudulently joined. In her opinion, she states:

> Individuals, including supervisors, are not employers and, therefore, cannot be held liable for state-law claims under Or. Rev. Stat § 659A. *Reyna v. City of Portland*, No. 02-980-JO, 2005 WL 708344, at *7 (D. Or. Mar. 28, 2005). Thus, the definition of "employer" under Or. Rev. Stat. § 659A.001(4) does not include individuals such as Defendants Nowack and King, who Plaintiff identifies as manager rather than employers. For purposes of diversity jurisdiction, therefore, these individuals are "sham" and "fraudulent" defendants because Plaintiff cannot bring claims against them under Or. Rev. Stat. § 659A.112.

2006 WL 2382514 *2, 3.

Plaintiff here dos not have viable claims against individual defendants Gray, Jasperson, Ball, Humphreys-Loving, and Cochell because plaintiff may pursue his claims for their allegedly unlawful conduct against Starbucks.

The United States Supreme Court has also recognized that the law holds *employers* – not individual employees – liable for the unlawful acts of their employees. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 42, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). As the Supreme Court in *Ellerth* recognized, "If a supervisor takes an adverse employment action because of race, causing the employee a tangible job detriment, the employer is vicariously liable

PAGE 24 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

for resulting damages.  This is because such actions are company acts that can be performed **only by the exercise of specific authority granted by the employer, and thus the supervisor acts as the employer."**  (*Id.*)  Here, plaintiff repeatedly admits in his complaint that the individual defendants *were acting within the course and scope of their employment* when allegedly discriminating and retaliating against him.  (Amended Complaint ¶¶ 2-5.)  Notwithstanding plaintiff's admission in that regard, the individual defendants simply *could not* take any adverse action against plaintiff if not within the "scope and authority" of their employment.  Because the individual defendants could not have taken an "independent" adverse employment action against plaintiff, they cannot be held individually liable for discrimination or retaliation and therefore likewise cannot be held individually liable for aiding and abetting in discrimination or retaliation.

Even less palatable is plaintiff's aiding and abetting claim against co-workers Ms. Ball and Ms. Humphreys-Loving.  Ms. Ball and Ms. Humphreys-Loving had no supervisory authority over plaintiff.  They had no authority to discipline or terminate plaintiff, determine his rate of pay, schedule or hours, or approve leaves of absences or sick leave.  In short, neither Ball nor Humphreys-Loving could take any adverse employment action against plaintiff; they simply did not have the power or authority to do so.  Accordingly, plaintiff cannot assert a valid claim for discrimination or retaliation against Ball or Humphreys-Loving.  Because they cannot be held liable for discrimination or retaliation, logically they cannot be held liable for aiding and abetting discrimination or retaliation.

> **5.    The relief sought against the individuals is identical to the relief sought from Starbucks, confirming that plaintiff has no separate and district claim for relief against the individual defendants on which to state a claim.**

Plaintiff's aiding and abetting claim is made against "All Defendants."  (Amended Complaint p. 16.)  Similarly the relief sought under this claim is alleged without distinction as between any of the defendants. (Amended Complaint ¶¶ 37-41, 69.)  It is clear therefore that the claims against the individual defendants provide no separate and distinct relief from those against Starbucks; Starbucks is the real party in interest and the claims against the individuals

PAGE 25 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

should be dismissed.  *See Reyna v. City of Portland*, 2002 WL 32770553, *2 (D. Or. 2002) (dismissing "representative" claims against police chief where the claim against him was identical to that against his employer).

The individual defendants in this case and they are fraudulently joined.  Plaintiff's Motion to Remand should be denied.

**C.    Plaintiff's Retaliation Claim Against Gray, Jasperson and Cochell Is Insufficiently Plead and Not Cognizable Against Them as Individuals as a Matter of Law Because They Were Not Plaintiff's Employer**.

**1.    Gray Jasperson and Cochell Are Not Liable Because They Were Not Plaintiff's "Employer."**

The fourth claim for relief under ORS 659A.030(1)(f) fails as to the individual defendants because Section 659A.030 is applicable only to employers—and not individuals.[14] The Amended Complaint contains no allegations that Gray, Jasperson, and Cochell were plaintiff's "employer."  To the contrary, plaintiff alleges that the individuals were "authorized agents of and/or employed by Starbucks."  (Amended Complaint, ¶ 2-3).[15]  Because individuals, including supervisors, are not employers, they cannot be held liable for state law claims under ORS 659A.  *Ballinger v. Klamath Pacific Corp.*, 135 Or. App. 438, 452 *rev. den.* 322 Or. 360 (1995); *Zasada v. Gap, Inc.*, 2006 WL 2382514 (D. Or. Aug. 10, 2006), *citing Reyna v. City of Portland*, 2005 WL 708344 at *7 (D. Or. March 28, 2005).  *See also Reid v. Evergreen Aviation Ground Logistics*, 2009 WL 136019, *25-26 (D. Or. Jan. 20, 2009).

---

[14] ORS 659A.001(4) defines employer as "any person who in the state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed."

[15] Plaintiff also repeatedly alleges that Jasperson, Gray and Cochell acted "within the scope of their employment."  (Amended Complaint, ¶¶ 2-4.)  As such, Starbucks is vicariously liable for their actions meaning Starbucks is the real party in interest and the one to satisfy any claimed damages.

PAGE 26 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Independently, as set forth above, no authority supports a claim for relief against the individual defendants under Oregon law. The same analysis that applies to ORS 659A.030(1)(g) applies to ORS 659A.030(1)(f). *See* Section II.B.2-5, above.

### 2. No allegations support a plausible claim of action of retaliation against Cochell, Jasperson or Gray.

A prima facie case of retaliation under "requires a showing that (1) the plaintiff engaged in protected activity opposing discrimination; (2) the plaintiff experienced a materially adverse action, that is, an action that a reasonable employee would find materially adverse; and (3) a causal connection exists between the protected activity and the adverse action." *See Steele v. Mayoral*, 231 Or. App. 603, 616, 220 P.3d 761 (2009) (setting forth the elements of a retaliation claim); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (accord). Here, the first alleged instance of plaintiff opposing discrimination occurred on October 28, 2008, when he called Starbucks Helpline. The only adverse employment actions that plaintiff alleges to have suffered after making this call were the issuance of a corrective action, being told to go home, and his termination. What plaintiff has not alleged—and what the extrinsic evidence disputes— is a causal connection between the protected conduct and alleged adverse actions as to each of the three individually named defendants.

The evidence shows that the decision to give plaintiff corrective action occurred prior to his Helpline call. The evidence also shows that Gray only sent plaintiff home after he displayed a knife during a meeting between himself, Ms. Gray and Mr. Jasperson. Finally, the evidence shows that plaintiff was only terminated after he became verbally hostile both Ms. Gray and Ms. Cochell.

Ms. Cochell was not responsible for and had no say in setting plaintiff's hours, administering the November corrective action, or terminating him. There are no allegations to the contrary in the Amended Complaint. The allegations as to Cochell are only that she received plaintiff's doctor's note, called plaintiff to tell him Starbucks would pay him for time worked so

PAGE 27 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

that he would not lose his benefits, and was unspecific about plaintiff's job status or return to work.  (*See* Amended Complaint, ¶¶ 24, 27-29.)  These allegations are insufficient under *Iqbal* and *Twombly* to state a claim for retaliation.

Plaintiff similarly has not plead facts sufficient to state a claim against Jasperson and Gray for retaliation.  Plaintiff does not make any allegations that Jasperson either denied or was hostile toward plaintiff because plaintiff requested a fixed schedule; plaintiff's conclusory allegations otherwise[16] are insufficient to defeat a motion to dismiss.  *See Iqbal*, 129 S. Ct. at 1949-1950, *Twombly*, 550 U.S. at 555, 557.    Plaintiff also does not allege that Jasperson was responsible for his termination.  In fact, Jasperson was gone at a triathlon when the termination decision occurred—he was not part of such decision.

**D.    Plaintiff's Does Not Have a Valid Claim for Intentional Interference with Economic Relations Against the Individual Defendants Because Employees Acting Within the Scope of Employment – As Plead Here – Are Not "Third Parties" and Because Plaintiff Has Not Plead Facts Showing that Any of the Individuals Interfered With His Economic Interests.**

Plaintiff pleads two causes of action for intentional interference with economic relations: the eighth cause of action is against all defendants, the ninth cause of action is against the individual defendants only.  Both claims are without merit.

"To state a claim for intentional interference with economic relations, a plaintiff must allege each of the following elements: (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532, 538, 901 P.2d 841 (1995).  It is well settled that an employee acting within the scope of his employment is not a third party for purposes of the third element of an intentional interference claim.  *See McGanty*,

---

[16] ("Plaintiff told Ball that he *believed* JASPERSON cut his hours to teach him to not get sick again." Amended Complaint, ¶14.) (emphasis added)

PAGE 28 - MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

321 Or. at 538 ("Accordingly, when an employee is acting within the scope of the employee's employment, and the employer, as a result, breaches a contract with another party, that employee is not a third party for the tort of intentional interference with economic relations.").   In his eighth claim for relief, plaintiff alleges that the individual defendants were acting within the scope of their employment.  (Amended Complaint, ¶ 81.)  Accordingly, as a matter of law, they cannot be liable for the tort of intentional interference with economic relations and the eighth claim for relief fails.

Plaintiff's eighth claim against the individual defendants independently fails because it lacks any plausible factual support.  Plaintiff alleges that "[d]efendants' interferences with plaintiff's relationship with potential employers were in the form of publishing and republishing false information regarding plaintiff's work performance and employment history with Starbucks and character."  (Amended Complaint, ¶ 82.)  This allegation is both too conclusory under *Iqbal* and *Twombly* to be relied upon and insufficient under Oregon law to state a claim.  Plaintiff asserts no facts in his Amended Complaint showing that any third party was interfered with, or that any of the individual defendants were responsible for such alleged interference.  Plaintiff's eighth claim for relief therefore fails to support their joinder as defendants in this lawsuit.

In the ninth cause of action, pled in the alternative, plaintiff alleges that the individual defendants interfered with his employment pursuits (both at Starbucks and post-termination) while acting *outside of* the course and scope of their employment.  (Amended Complaint at ¶ 87.) Here again, plaintiff has alleged no facts to support such a claim.  Significantly, paragraph 85 of the Amended Complaint – which falls under plaintiff's Ninth Claim for Relief – "restates and incorporates by reference paragraphs 1-36, inclusive, as though fully set forth herein." Paragraph 2, as incorporated, states:  "Defendants Ryan Jasperson ("JASPERSON") and Sheila Grey ("GREY") were at all material times authorized agents of and/or employed by STARBUCKS and were in substantial part *acting within the scope of such agency and/or employment. . . ."  (*Id.* ¶ 2) (emphasis added).  Likewise, paragraph 3 in the Amended Complaint

PAGE 29 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

reads, "Defendants Lisa Ball ("BALL"), Megan Humphreys-Loving ("HUMPHREYS-LOVING") (sic) and Erin Kotchell ("KOTCHELL") were at all material times authorized agents of and/or employed by STARBUCKS and in connection with most of the claims were in substantial part *acting within the scope of such agency and/or employment.*" (*Id.* ¶ 3) (emphasis added). Thus, plaintiff's factual assertions directly contravene the ninth cause of action – meaning his asserted cause of action is not plausible on its face.

The Amended Complaint also contains no factual assertions that the conduct of the individual defendants occurred outside the time and space limits authorized by employment, that the alleged conduct was motivated by a purpose other than to serve Starbucks, or that the alleged conduct was not of a kind which the actor was hired to perform. *Chesterman v. Banmon*, 305 Or. 439, 442 (1988) (setting forth factors for determining whether an employee was within the scope of employment).

Finally, as with the eighth cause of action, plaintiff asserts no facts in the Amended Complaint to support a claim that any third party was interfered with, or that any of the individual defendants were responsible for such alleged interference. He further sets forth no facts showing which of the individual defendants had the capacity to or did in fact interfere with his relationship with Starbucks as required by *McGanty*. Plaintiff's ninth claim for relief therefore fails to state a claim upon which relief can be granted and therefore cannot support the joinder of the individual defendants in this action. Plaintiff's instant Motion should therefore be dismissed.

**E.    Attorney Fees Are Not Appropriate Even If The Case Is Remanded Given The Lack Of Plausible Pleading And Authorities Cited Herein.**

Even if this court determines that remand is proper, an award of attorneys' fees is not. During the conferral process defense counsel raised plaintiff's failure to assert factual—as opposed to conclusory—allegations in support of his claims. (Lively Decl. ¶ 6.) Defense counsel informed plaintiff's counsel that under *Twombly* and *Iqbal*, such allegations were

PAGE 30 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

required to state a claim.  (*Id.*)  Plaintiff's counsel responded that she was unfamiliar with these Supreme Court opinions, as she practiced in state court.  (*Id.*)  Defense counsel also raised the lack of any case law holding, in particular co-workers (such as Ball and Humphreys-Loving), but also supervisors, liable for acts committed within the scope of employment (as alleged repeatedly in plaintiff's Amended Complaint) and where such individuals are not named as "employers," as is the case here.  (*Id.*)

The position of the individual defendants in this motion is well supported by authority. The *Gaither* opinion, which is not precedent, does not require a contrary finding.  As discussed above, *Gaither* presented different issues than those at issue here.  In support of his aiding and abetting claim against his former supervisor, the plaintiff in *Gaither* alleged a known "plot" to which the individual defendant was "complicit."  This satisfied the court as to meeting the basic requirements of intent and knowledge required to sustain for an aiding and claim.  No similar allegations exist in plaintiff's Amended Complaint.  Gaither did not consider *McPhail* and Judge Mosman also was not faced with the *Twombly/Iqbal* deficiencies in play here or the fact that the alleged aiders and abettors are "primary actors"—thereby invoking the *Sniadoski* admonition that a person cannot aid and abet themselves.  In fact, it does not appear that several of the arguments raised herein were raised in *Gaither*; *Gaither* is not a proper basis for awarding attorneys fees in this matter and plaintiff's request to do so should be denied.

## IV.  CONCLUSION

In his motion, plaintiff offers no valid justification for naming Gray, Jasperson, Ball, Humphreys-Loving, or Cochell as individual defendants in this action, nor does the Amended Complaint identify any relief that can validly be awarded against any of them.  Under these

PAGE 31 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

circumstances, defendants Gray, Jasperson, Ball, Humphreys-Loving, and Cochell have been fraudulently joined.  Defendants therefore respectfully request that this Court deny Plaintiff's Motion to Remand.

DATED:  July 9, 2010

LANE POWELL PC


By____/s/  Leah C. Lively_____
Leah C. Lively, OSB No. 962414
Sharon Bolesky, OSB No. 062784
Telephone:  503.778.2199
Sharon Bolesky, OSB No. 062784
Telephone:  503.778.2100
Attorneys for Defendants

PAGE 32 -  MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND